AO 91 (Rev. 5/85) Criminal Complaint

ORIGINAL

# United States District Court

DISTRICT OF GUAM

FILED
DISTRICT COURT OF GUAM
November 12, 2002
MARY L. M. MORAN
CLERK OF COURT

UNITED STATES OF AMERICA
V.

DAVINA LUJAN

**CRIMINAL COMPLAINT**

CASE NUMBER: 02-00024 86 RSN

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about  January 1, 2000  in _____ county, in the _____ District of  Guam  defendant(s) did, (Track Statutory Language of Offense)

Possession with Intent to Distribute Oxycodone with Acetaminophen; Acquiring Percocet, a Schedule II Controlled Substance, by Fraud; Illegal Possession of Percocet, a Schedule II Controlled Substance; Conspiracy to Acquire by Fraud, Illegally Possess and Possess With Intent to Distribute Percocet, a Schedule II Controlled Substance; and, Aiding and Abetting.

in violation of Title  21  United States Code, Section(s)  841(a)(1), 843(a)(3), 844(a), 846 & 18 USC 2 .

I further state that I am a(n)  Special Agent, DEA  and that this complaint is based on the following
Official Title

facts:

See the attached Affidavit which is incorporated herein.

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

November 7, 2002                    at    Tiyan, MP
Date                                        City and State

ALEX R MUNSON, JUDGE                _____
Name & Title of Judicial Officer                Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

Case 1:02-cr-00086   Document 1   Filed 11/12/2002   Page 1 of 9

# AFFIDAVIT

I, William Fiebig, being duly sworn, declare as follows:

I am a Special Agent with the Drug Enforcement Administration, DEA, and have been so employed for over fourteen years. I am currently assigned to the DEA Saipan Post of Duty. I have spoken with Allan Lovas, a Diversion Investigator ("D/I") for the Drug Enforcement Administration who provided the following information:

a). Allan Lovas has been employed for approximately six and one-half years as a D/I. He is currently assigned to the DEA Diversion Unit in Honolulu, Hawaii. As a Diversion Investigator, he is responsible for investigating violations of Titles 21 and 18 of the United States Code and Title 21 of the Code of Federal Regulations involving the illegal diversion of controlled substances into other than legitimate medical, scientific, and industrial channels by unlicensed individuals as well as by licensed practitioners, such as physicians and pharmacists. He is also responsible for investigating violations of Titles 21 and 18 of the United States Code and Title 21 of the Code of Federal Regulations involving the illegal diversion of listed chemicals into other than legitimate channels by unlicensed individuals as well as by licensed chemical handlers, such as firms that manufacture or distribute products which contain listed chemicals.

He has conducted numerous investigations into the unlawful distribution of controlled substances and the unlawful possession of controlled substances with intent to distribute. He has also conducted numerous investigations into the possible unlawful manufacture and distribution of listed chemical products. He has also been responsible for overseeing an investigation relating to the laundering of monetary instruments. To successfully conduct these investigations, he has utilized a variety of investigative techniques and resources, including sources of information,

confidential sources, undercover law enforcement personnel, pen registers, mail covers, and has directed physical, photographic, and electronic surveillance by DEA Special Agents. Based upon his experience in these investigations, his training and his conversations with other senior Diversion Investigators and with law enforcement personnel, he has become familiar with the methods used by traffickers to distribute listed chemicals and controlled substances and to collect and launder related proceeds.

Based upon his training and experience, his participation in other investigations involving the diversion of controlled substances by licensed practitioners and others into other than legitimate medical, scientific, and industrial channels, and his discussions with other senior investigators and agents experienced in such investigations, he knows that certain Central Nervous System ("CNS") pain killers, due to their habit forming nature, are often diverted to the drug abusing population, either because an individual is addicted to the particular drug or to counteract the effects of his or her addiction to other drugs, including narcotics and CNS stimulants such as cocaine, amphetamine, and methamphetamine hydrochloride, also known as "Ice". Such depressants and other sleep-inducing medications are often used to counteract the insomnia and nervousness suffered by individuals addicted to stimulants. These drugs include, but are not limited to, the following:

> Oxycodone Hydrochloride with Acetaminophen tablets USP, a narcotic pain killer commercially sold under the brand name of Percocet, is a Schedule II controlled substance. According to the Physicians' Desk Reference (53rd ed. 1999) ("PDR"), this narcotic drug can be habit forming and is used for the treatment of moderate to moderately severe pain.

2

D/I Lovas advised your Affiant that on November 4, 2002, Therese Hart, hereinafter Hart, was interviewed. Hart is a person who was interviewed pursuant to a plea agreement between her and the United States Attorneys Office for the District of Guam. Following her plea agreement, Hart entered a plea of guilty in the District Court of Guam to a felony charge of money laundering in violation of Title 18, United States Code, Section 1956. This plea agreement requires her cooperation with United States law enforcement, such cooperation to include providing complete and truthful information to law enforcement. D/I Lovas has advised your Affiant that he believes the information provided by Hart to be reliable because her statements relating to controlled substances were independently verified by him. Additionally, D/I Lovas advised your Affiant that he has spoken to Special Agents with the FBI and IRS - CID, who advised him that Hart has provided other information which those Special Agents deemed to be reliable. Additionally, Hart stated to D/I Lovas that the following events occurred during the year 2000, at which time Hart was working at the Guam Memorial Hospital (GMH) in an administrative capacity:

(1) On October 6, 2000, at approximately 10:00 a.m. or 11:00 a.m., Hart received a telephone call from the Governor of Guam, Carl T. C. Gutierrez, who stated that he needed Percocet. The Governor instructed Hart to get him a prescription for Percocet and to put the prescription under the name of Hart. The Governor told Hart not to get the prescription from Olivia Cruz, M.D. Hart asked the Governor how he was going to pick up the medication. The Governor stated he would send one of his drivers. Hart, after concluding her telephonic conversation with the Governor, walked from her office to the nearby office of another GMH administrator, Davina LUJAN, M.D., hereinafter referred to as LUJAN, for the purpose of

3

obtaining a prescription for Percocet in the name of Hart. Hart did not go to her primary care provider, PacifiCare, because she was not confident that PacifiCare would give her a prescription for Percocet. However, Hart was confident that LUJAN would give her a prescription for Percocet because Hart was aware that LUJAN had written, on behalf of the Governor, prescriptions in the names of third parties, knowing or having reasonable cause to believe that the medications would ultimately go to the Governor. Hart stated to LUJAN that Hart needed a prescription for the Governor for Percocet and that the prescription should be written under the name of Hart. LUJAN replied with words to the effect, "Oh, not again!" LUJAN then wrote a prescription for Percocet in the name of Hart and handed the prescription to Hart. The visit by Hart with LUJAN lasted five minutes or less. Up to that time, Hart had never been a patient of LUJAN. At no time during Hart's visit with LUJAN did LUJAN have Hart fill out a medical history questionnaire, fill out a pain questionnaire, take the vital signs of Hart, or give Hart a physical examination. At the time of Hart's visit to LUJAN's office, Hart was experiencing no physical pain and LUJAN did not ask Hart if she was in any pain. While Hart was in LUJAN's office, LUJAN took no notes and wrote nothing in any patient chart. Hart, upon leaving LUJAN's office, returned to her office, whereupon she dialed the Governor's cell phone, knowing that someone other than the Governor would answer the phone. The phone call from Hart was answered by B. J. Palomo, a driver for the Governor. All of the Governor's drivers are police officers. Hart told Officer Palomo that she had obtained a prescription for Percocet. Officer Palomo then told Hart that he "would be right over" to the hospital. Shortly thereafter, Officer Palomo arrived at the hospital driving a late model Ford Expedition bearing the license plate "GOVERNOR". Officer Palomo drove Hart, in the Ford Expedition, to three pharmacies.

The first two pharmacies were not able to fill the prescription for Percocet. The third pharmacy, Perezville Pharmacy, filled the prescription. Hart gave the unopened bottle of Percocet to Officer Palomo, who then drove her back to the GMH. Your Affiant and Diversion Investigator John Palomo, upon reviewing the pharmacy records of Perezville Pharmacy, corroborated the information provided by Hart that she received a prescription written by LUJAN for 60 tablets of Percocet on October 6, 2000;

(2) On another occasion during the year 2000, Hart was in LUJAN's office. At that time Hart overheard a telephone conversation between Gil Shinohara (Shinohara), the Governor's Chief of Staff, and LUJAN. Based on the conversation that Hart overheard and Hart's conversation with LUJAN that immediately followed, Hart concluded that Shinohara had asked LUJAN to write a prescription in the name of Shinohara's ex-wife, Elizabeth Santos Shinohara. After LUJAN concluded the phone conversation with Shinohara, Hart observed LUJAN writing a prescription. Hart stated that she was in LUJAN's office on two other occasions in which LUJAN received similar telephone calls from Shinohara. Immediately following each of those two phone conversations, Hart observed LUJAN writing a prescription. On another occasion, Shinohara telephoned Hart and told her to destroy the controlled substances log in the GMH pharmacy. Hart refused to destroy these records.
During D/I Lovas' examination of controlled substances records that Diversion Investigator John Palomo and he had previously received from Guam pharmacies, they determined that in the year 2000, the following Schedule II controlled substances were dispensed from prescriptions written by LUJAN in the name of Elizabeth Santos Shinohara:

5

| CONTROLLED SUBSTANCE | QUANTITY | PHYSICIAN | DATE |
|---|---|---|---|
| Percocet | 20 Tabs | Lujan, Davina | 07/16/00; |

(3) On November 4, 2002, D/I Lovas provided Hart with a list of hundreds of names of individuals. Hart reviewed the list of names and identified herself, B. J. Palomo, and Elizabeth Santos Shinohara, who, based on information and belief of Hart, may have provided the Governor with controlled substances, to wit: Percocet, a Schedule II controlled substance, from prescriptions written by LUJAN. Hart believes that the Schedule II prescriptions for these individuals were written in their names but intended for the Governor. On the list was the name Benjamin Joseph Palomo, a driver for the Governor, who is also a Guam Police Officer. During D/I Lovas' examination of controlled substances records that he and Diversion Investigator Palomo had previously received from Guam pharmacies, they determined that the following prescriptions for Percocet or APAP with Oxycodone (the generic of Percocet) were written by LUJAN for Benjamin Joseph Palomo:

| CONTROLLED SUBSTANCE. | QUANTITY | PHYSICIAN | DATE |
|---|---|---|---|
| APAP/Oxycodone | 60 | Lujan, Davina | 07/07/00 |
| Percocet type tab | 20 | Lujan, Davina | 04/26/01; and, |

(4) Hart stated that she believes that from January 1, 2000 to the present, prescriptions have been written in the name of the Governor by physicians other than the Governor's primary care physician. During D/I Lovas' examination of controlled substances records that he and Diversion Investigator Palomo had previously received from Guam pharmacies, they determined that the following prescriptions for Percocet, or APAP with Oxycodone (the generic of Percocet) were written by LUJAN in the name of Carl T. Gutierrez:

6

| CONTROLLED SUBSTANCE | QUANTITY | PHYSICIAN | DATE |
| --- | --- | --- | --- |
| APAP/Oxycodone | 60 | Lujan, Davina | 03/28/00 |
| Percocet | 60 | Lujan, Davina | 12/20/00 |
| APAP/Oxycodone | 100 | Lujan, Davina | 04/26/01. |

b). D/I Lovas further advised your Affiant that the Code of Federal Regulations, Title 21, Section 1304.04 requires every DEA registrant, for a minimum of two years, to keep and make available for inspection and copying by authorized employees of the Administration all controlled substances records. D/I Lovas began analyzing LUJAN's prescribing practices in October 2002, at which time he and Diversion Investigator John Palomo gathered and began to analyze all the Schedule II controlled substances prescriptions that had been filled by pharmacies located in the Territory of Guam from January 1, 1999 to November 1, 2002. On November 5, 2002, D/I Lovas determined from records previously obtained from Perezville Pharmacy that on 10/06/00, Perezville Pharmacy filled a prescription for 60 tablets of APAP (Acetaminophen) with Oxycodone (the generic form of Percocet) in the name of the Hart. The prescribing physician was LUJAN.

c). Based on the foregoing facts, and on my training and experience, I believe probable cause exists that LUJAN has violated Title 21, United States Code, Section 841(a)(1) (possession with intent to distribute Oxycodone with Acetaminophen, a Schedule II controlled substance, outside the scope of standard medical practice), Title 21 United States Code, Section 843(a)(3) (acquiring Percocet, a Schedule II controlled substance, by fraud), Title 21, United States Code, Section 844(a) (illegal possession of Percocet, a Schedule II controlled substance), and Title 21, United States Code, Section 846 (conspiracy to acquire by fraud, illegally possess, and possess

with intent to distribute Percocet, a Schedule II controlled substance), and additionally, violations of Title 18, United States Code, Section 2 (aiding and abetting) as these violations relate to the above referenced violations of Title 21 of the United States Code.

*[signature]*
WILLIAM FIEBIG
Special Agent
Drug Enforcement Administration

Sworn and Subscribed to before me
This __7TH__ day of __NOVEMBER__ 2002.

*[signature]*
UNITED STATES DISTRICT JUDGE